**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| T.C., | Civil Action No. 24-4929 (SRC) |
| Plaintiff, | |
| v. | OPINION |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**CHESLER, District Judge**

This matter comes before the Court on the appeal by Plaintiff T.C. ("Plaintiff") of the final decision of the Commissioner of Social Security ("Commissioner") determining that he was not disabled under the Social Security Act (the "Act"). This Court exercises jurisdiction pursuant to 42 U.S.C. § 405(g) and, having considered the submissions of the parties without oral argument, pursuant to L. Civ. R. 9.1(b), finds that the Commissioner's decision will be vacated and remanded.

In brief, this appeal arises from Plaintiff's applications for disability insurance benefits and supplemental security income in February of 2021, alleging disability starting on November 1, 2020. A hearing was held before ALJ Leonard Costa (the "ALJ") on April 27, 2023, and the ALJ issued an unfavorable decision on June 14, 2023. Plaintiff sought review of the unfavorable decision from the Appeals Council. After the Appeals Council denied Plaintiff's request for review, the ALJ's decision became the Commissioner's final decision, and Plaintiff filed this

1

appeal.

In the decision of June 14, 2023, the ALJ found that, at step three, Plaintiff did not meet or equal any of the Listings. At step four, the ALJ found that Plaintiff retained the residual functional capacity to perform light work, with certain nonexertional limitations. At step four, the ALJ also found that Plaintiff was unable to perform any past relevant work. At step five, the ALJ determined, based on the testimony of a vocational expert, that there are jobs existing in significant numbers in the national economy which the claimant can perform, consistent with his medical impairments, age, education, past work experience, and residual functional capacity. The ALJ concluded that Plaintiff had not been disabled within the meaning of the Act.

Plaintiff makes four arguments on appeal: 1) at step two, the ALJ erred in applying the *de minimis* standard; 2) at step three, the ALJ's determination is not supported by substantial evidence; 3) at step four, the residual functional capacity ("RFC") determination is not supported by substantial evidence, but rests on the ALJ's lay opinion; and 4) the ALJ erred in the weight assigned to Plaintiff's subjective reports. As the discussion which follows will show, because the Court concludes that Plaintiff's challenge to the RFC determination succeeds, the Court need not reach the first and fourth arguments.

The Court will, nonetheless, address Plaintiff's challenge at step three, because it comes close to succeeding. Plaintiff contends that the ALJ's determination that Plaintiff does not meet all the requirements of Listing 2.07 is not supported by substantial evidence. The ALJ wrote:

> The claimant does not meet the requirements of Listing 2.07, disturbance of labyrinthine-vestibular function. The claimant had reduced vestibular response of 25 percent in the left ear; and hearing loss in the right ear. However, his positional testing was normal. In addition, there was no clear medical evidence of frequent attacks of balance disturbance, tinnitus and progressive hearing loss. In addition,

2

>hearings tests on June 30, 2020 (Exhibit BlF p.14), and June 1, 2021 (Exhibit B 14 p. 7), appeared to have the same hearing level results, with no progressive hearing loss.

(Tr. 21.) Plaintiff points to specific pages in the medical record that, he contends, document that he meets the requirements of that Listing. Plaintiff argues that the ALJ's statement that "there was no clear medical evidence of frequent attacks of balance disturbance, tinnitus and progressive hearing loss" is conclusory. (Pl.'s Br. at 27.)

>Listing 2.07 states:
>
>2.07 Disturbance of labyrinthine-vestibular function (Including Ménière's disease), characterized by a history of frequent attacks of balance disturbance, tinnitus, and progressive loss of hearing. With both A and B:
>
>A. Disturbed function of vestibular labyrinth demonstrated by caloric or other vestibular tests; and
>
>B. Hearing loss established by audiometry.

The first two requirements are a history of frequent attacks of balance disturbance and tinnitus.

The Commissioner's opposition brief states:

>Plaintiff relies in part on his reported complaints of frequent attacks of balance disturbance, tinnitus, and progressive hearing loss in support of a finding that he satisfies the requirements of Listing 2.07 (PL 's Br. at 27). The ALJ, however, recognized Plaintiffs allegations, but reasonably explained that there was no clear medical evidence of the frequency or duration of his symptoms (Tr. 21). The record supports the ALJ's conclusion where, as noted, Plaintiff's treatment records reflected his reported symptoms (*see, e.g.*, Dr. Razvi's records at Tr. 475-83).

(Def.'s Opp. Br. at 18.) The Commissioner thus agrees that "Plaintiff's treatment records reflected his reported symptoms." It is undisputed that the record contains substantial evidence of a history of frequent attacks of balance disturbance and tinnitus. The record also shows substantial evidence of requirement A, disturbed function of vestibular labyrinth demonstrated

3

by caloric testing; the Commissioner's opposition brief (Def's. Opp. Br. at 17) cites the audiologist's report of caloric testing, dated September 7, 2022, which states: "Caloric showed a reduced vestibular response of 25% in the left ear." (Tr. 685.) The record also shows substantial evidence of requirement B, hearing loss established by audiometry.[1] (See Tr. 619-621.) The DDS medical expert concluded: "Claimant has severe hearing loss." (Tr. 88.)

This leaves only one requirement of Listing 2.07 that may be disputed: progressive hearing loss. As already noted, it is undisputed that the record establishes hearing loss; the only question is whether there is evidence that the hearing loss is "progressive." Plaintiff contends that the ALJ's conclusion that the medical evidence does not evidence progressive hearing loss is not supported by substantial evidence. The Court disagrees. The ALJ relied on the written statements of the DDS physicians, who opined as follows:

> MER: 6/23/20 - 6/1/21 Dr. Razvi (ENT)- Hx reviewed, claimant complains of dizziness, at times severe. Also, c/o tinnitus and decreased hearing in right ear. Audiology results: 6/30/20 Right ear, air conduction masked AND bone conduction, average threshold 75 dB over 500 Hz - 2,000 Hz. Left ear, pure tone, NOT masked, average 25 dB over same range. Speech recognition threshold 75 dB AD, 10 dB AS. Word discrimination 80% @ 80 dB right, 100% @ 35 dB left. 6/1/21 repeat audiogram performed. Findings essentially identical to prior audiometry.

(Tr. 88.) This constitutes substantial evidence that the audiology evaluations conducted in June of 2020 and June of 2021 showed essentially identical results, which supports the ALJ's determination that the progressive hearing loss requirement has not been met. Although Plaintiff contends that the ALJ's reasoning on this point is faulty, Plaintiff does not point out specific

---

[1] The Commissioner's opposition brief states that the ALJ recognized that Plaintiff had "hearing loss in the right ear." (Def.'s Opp. Br. at 17.) The ALJ specifically cited the audiometry testing of record. (Tr. 21.)

4

evidence of record which demonstrates progressive hearing loss. Because the Commissioner has cited medical evidence of record which supports the conclusion that Plaintiff has not met the progressive hearing loss requirement, and Plaintiff has not marshalled the evidence to demonstrate that the evidence supports the contrary conclusion, Plaintiff's challenge at step three does not succeed. The ALJ's determination that Plaintiff does not meet all the requirements of Listing 2.07 is supported by substantial evidence.

At step four, the ALJ determined that Plaintiff retains the residual functional capacity for light work, with certain additional environmental and nonexertional limitations. Plaintiff argues that this determination is not supported by substantial evidence, and this Court agrees. In short, at step four, the ALJ rejected as unpersuasive all of the evidence about Plaintiff's vertigo, including the medical evidence that the vertigo impairs the ability to work, but did not cite any medical opinion that Plaintiff does not suffer from vertigo or that, despite the vertigo, Plaintiff retains the residual functional capacity to perform light work.

The ALJ begins the discussion of Plaintiff's residual functional capacity by stating that, while the record shows that Plaintiff suffers from vertigo, "the claimant has been capable of performing substantial activity on a sustained basis." (Tr. 24.) The ALJ then reviewed the records from the physician who treated Plaintiff for vertigo, Dr. Razvi, the physician who performed a consultative neuropsychological evaluation, Dr. Bagner, the records from audiologist Lorraine Sgariato, the records from a physical therapy vestibular evaluation and subsequent reevaluation, a different physical therapy evaluation in March of 2023, an assessment from treating psychiatrist Dr. Wijaya, and the evaluations of the two DDS reviewing physicians. In short, these records show that: 1) Plaintiff complained of the vertigo to all of the medical

5

sources; 2) all the medical sources took the complaints of vertigo seriously and treated it as a real problem; 3) the objective medical evidence demonstrates underlying vestibular pathology; and 4) not one medical source said anything close to the opinion that the claimant is nonetheless capable of working.

The Court will now review the specific items of medical evidence cited by the ALJ. The ALJ acknowledged that Dr. Razvi treated Plaintiff for vertigo for close to five years and that Dr. Razvi opined that Plaintiff is unable to work. The ALJ summarized the evidence from Dr. Razvi as follows:

> On April 25, 2023, Dr. Razvi completed a Meniere's disease medical opinion questionnaire. It was noted that the claimant had a diagnosis of Meniere's disease, and had been seen since May 31, 2018, for dizziness. It was a reported that the claimant had had frequent attacks of balance disturbance, tinnitus and progressive hearing loss. It was related that there was disturbed function of vestibular labyrinth demonstrated by caloric or other vestibular tests. Symptoms associated with Meniere's disease were identified as including vertigo; nausea/vomiting; malaise; mood changes; mental confusion/inability to concentrate; fatigue/exhaustion.; loud ringing; and headaches. It was related that on average, the claimant had a few Meniere's attacks a month, typically lasting all day. It was noted that precipitating factors included stress and increased humidity. Post attack manifestations included confusion, exhaustion, irritability and severe headache. It was opined that the claimant was incapable of tolerating even "low stress" work. It was further opined that the claimant would likely be off task for 20 percent of the workday; and it was unknown how many days a month the claimant would likely be absent from work. It was recognized that the claimant's medication, Diazepam, tended to cause sedation. Prognosis was fair. Dr. Razvi opined that the claimant was able to sit, stand and walk fine, except on days when he got dizzy spells. It was further opined that the claimant's hearing loss and loud ringing in his ears could interfere with the nature of his work.

(Tr. 26-27.)

Consultant neurologist Dr. Bagner evaluated Plaintiff on June 16, 2021 and issued a report which summarizes the results of a physical examination. (Tr. 554-55.) Under "Impression," the report states only, "Vertigo." (Tr. 555.) The report ends with a "Note" section

6

that states that Plaintiff ambulates with "marked difficulty." (Tr. 555.) The report then states: "The objective findings do not the correlate with the patient's marked difficulty." Regarding Dr. Bagner's report, the ALJ stated:

> Dr. Bagner did not give any opinion regarding the claimant's ability to perform work related activities. However, the physical examination is supportive of the claimant's abilities to perform work with the above residual functional capacity.

(Tr. 32.) While it is true that Dr. Bagner gave no opinion about the claimant's ability to work, the Court finds that the ALJ's statement that the physical examination supports the capacity to perform light work is not supported by Dr. Bagner's report. Dr. Bagner documented that Plaintiff suffers from vertigo and has marked difficulty with ambulation. The Court finds no support in Dr. Bagner's report for the inference that Plaintiff is capable of light work. To the contrary, Dr. Bagner's report constitutes substantial evidence that Plaintiff is not capable of light work. The ALJ's statement that the physical examination supports the inference that Plaintiff is capable of light work is not supported by the text of Dr. Bagner's report, and it appears to be the ALJ's lay medical opinion about the medical evidence. See Plummer v. Apfel, 186 F.3d 422, 439 (3d Cir. 1999) ("an ALJ may not make speculative inferences from medical reports.")

The record contains records from two evaluation sessions in September, 2022 with audiologist Lorraine Sgarlato. (Tr. 676-687.) The evaluation summary states: "During testing, Tyreek reported dizziness and nausea with most parts of the test battery. Caloric showed a reduced vestibular response of 25% in the left ear." (Tr. 685.) The report also states: "Dizziness Handicap Inventory: Severe handicap." (Id.) The audiologist recommended a physical therapy vestibular evaluation. (Id.) As to the audiologist evaluation, the Commissioner conceded: "vestibular testing confirmed his diagnosis of Meniere's disease, vestibular weakness, and

hearing loss." (Def.'s Opp. Br. at 16.) It is significant that the Commissioner conceded that Plaintiff's diagnoses were confirmed by objective medical assessment.

The ALJ notes that the record contains a report from a physical therapy vestibular evaluation on March 2, 2023. (Tr. 794-805.) The report states:

> PT Assessment Results
>
> Decreased safety awareness, Pain, Decreased mobility, Decreased endurance, Decreased coordination, Impaired balance, Impaired hearing

(Tr. 803.) The report states this therapeutic goal: "Patient will tolerate continuous activity over 30min." (Tr. 803.) The report concludes with this assessment: "L & R vestibular hypofunction with significant Right hearing loss." (Tr. 804.) The report concludes with diagnoses of "Other peripheral vertigo, right ear – Primary, Other peripheral vertigo, left ear, and Dizziness." (Tr. 804.)

The ALJ noted that the record contains an assessment report, dated August 2, 2022, by treating psychiatrist Dr. Wijaya. (Tr. 669-74.) Dr. Wijaya gave diagnoses of anxiety disorder and vertigo. (Tr. 669.) Dr. Wijaya stated that Plaintiff's mental impairments resulted in functional impairment at the "marked" level in all four areas of psychological functioning assessed. (Tr. 673.) Dr. Wijaya stated that Plaintiff manifested "a complete inability to function independently" outside of his home. (Tr. 673.)

The DDS physicians, both at the initial level and on reconsideration, declined to make an RFC assessment on the ground that the evidence of record was insufficient. At the reconsideration level, the DDS physician wrote, in conclusion:

> Conclusion: Claimant has severe hearing loss, right ear, but mild loss in left with excellent speech and word thresholds. However, INSUFFICIENT EVIDENCE is presented for SPECIFIC allegation of vertigo: no vestibular testing reported,

8

> Neurology consultation was recommended by ENT specialist, report does not address vertigo. Up to this point, the only evidence we have for this allegation is TS's saying that claimant is telling them he has vertigo, but there's no testing to objectively confirm this.
>
> Reconsideration claim reviewed. Updated TP MER again does not document vestibular dysfunction established by VNG/caloric testing etc., which is called for by DDS evidentiary requirements. Audiograms from 2020 and 2021 documented identical speech discrimination scores, and only a very slight difference in speech frequency hearing thresholds in the right ear over that time period. However, this mildly progressive hearing loss cannot be used to meet a listing under vertigo, for the reasons described above. Initial claim rating of MER Insufficient is affirmed, based on the above.

(Tr. 106.) The DDS physicians did not opine that Plaintiff has the residual functional capacity to perform light work. It is important to note that the DDS physicians did not conclude that Plaintiff retains the residual functional capacity to perform work at any exertional level. Instead, the DDS examiners concluded that, due to the absence of vestibular testing in the record, there was insufficient evidence to evaluate the impact of Plaintiff's vertigo, because the record "does not document vestibular dysfunction established by VNG/caloric testing." (Tr. 106.) As already noted, the Commissioner has now conceded that vestibular testing was subsequently performed and that "vestibular testing confirmed his diagnosis of Meniere's disease, vestibular weakness, and hearing loss." (Def.'s Opp. Br. at 16.) It appears likely that this supports the inference that Plaintiff's complaints of vertigo have subsequently been supported by objective evidence of vestibular dysfunction, which the DDS physicians had previously stated was needed to confirm the complaints of vertigo.

Having reviewed the medical evidence of record cited by the ALJ in support of his residual functional capacity determination, the Court does not find substantial medical evidence in support of the determination that Plaintiff retains the residual functional capacity to perform

9

light work.  The Regulations define "light work" as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).  This definition requires that a person have the ability to do "a good deal of walking or standing."  The medical evidence of record is one-sided on the question of whether Plaintiff retains the capacity to do a good deal of walking or standing: all the evidence supports the conclusion that, due to his vertigo, Plaintiff lacks the residual functional capacity to perform at this exertional level on the sustained basis needed for employment.  The Commissioner's determination that Plaintiff retains the residual functional capacity to perform light work is not supported by substantial evidence.

      The Court recognizes that the ALJ stated reasons for discounting all of this medical evidence.  The problem is that, in the end, there is no substantial medical evidence to support the RFC determination at step four.  The ALJ offers very little more than his lay opinions that none of the medical experts is persuasive, and that alone does not constitute substantial evidence that supports the RFC determination.  The medical evidence consistently supports the inference that Plaintiff's vertigo limits his ability to walk such that he cannot perform work at the light level.

      An ALJ's lay medical opinion does not constitute substantial evidence.  "[A]n ALJ is permitted to accept or reject all or part of any medical source's opinion, as long as the ALJ supports his assessment with substantial evidence."  Plummer v. Apfel, 186 F.3d 422, 439 (3d

10

Cir. 1999). However, "an ALJ may not make speculative inferences from medical reports." Id. at 429. An ALJ may also not "employ her own expertise against that of a physician who presents competent medical evidence." Id.; Masher v. Astrue, 354 F. App'x 623, 627 (3d Cir. 2009); Ferguson v. Schweiker, 765 F.2d 31, 37 (3d Cir. 1985) ("By independently reviewing and interpreting the laboratory reports, the ALJ impermissibly substituted his own judgment for that of a physician; an ALJ is not free to set his own expertise against that of a physician who presents competent evidence."). The Third Circuit has stated:

> In other words, shorn of its rhetoric, the ALJ's conclusion that appellant is capable of engaging in sedentary activity is merely a function of the ***ALJ's own medical judgment***. As such, his conclusion may not be permitted to stand, for we have pointed out time and again that these kinds of judgments are not within the ambit of the ALJ's expertise.

Kent v. Schweiker, 710 F.2d 110, 115 (3d Cir. 1983) (emphasis added).

At step four, Plaintiff bears the burden of proof of disability. The Court finds, in short, that Plaintiff provided ample medical evidence of inability to work at the light exertional level that suffices to establish a limiting impairment, but that the Commissioner's rejection of that evidence, and determination that Plaintiff is capable of light work, is not supported by substantial medical evidence of record. There is no substantial evidence in the record that establishes that, although Plaintiff's vertigo limits to some extent his ability to ambulate, he nonetheless retains the residual functional capacity to perform light work.[2] It is supported only by the ALJ's lay opinion, which is insufficient under Third Circuit law to qualify as substantial medical evidence.

Plaintiff has succeeded in demonstrating that the residual functional capacity

---

[2] Furthermore, the medical evidence of record consistently treats Plaintiff's complaints of vertigo, and its effect on his ambulation, as valid and real.

11

determination at step four is not supported by substantial evidence. This Court finds that the Commissioner's decision is not supported by substantial evidence and will be vacated. This case will be remanded to the Commissioner for further proceedings in accordance with this opinion.

    s/ Stanley R. Chesler
STANLEY R. CHESLER, U.S.D.J.

Dated: April 23, 2025